## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HIGHLAND COMMERCIAL CONSTRUCTION, INC.**          CIVIL ACTION

**VERSUS**                                                      No. 23-543

**EDUCATION MANAGEMENT, INC., ET AL.**              SECTION I

### ORDER & REASONS

Before the Court is a motion[1] to compel mediation and stay the above-captioned case, filed by defendant Education Management, Inc., doing business as Blue Cliff College ("defendant"). Plaintiff Highland Commercial Construction, Inc. ("plaintiff") opposes[2] the motion. For the following reasons, the Court will deny defendant's motion.

## I.     BACKGROUND

This case arises out of a contract (the "Contract") executed on June 29, 2022,[3] between plaintiff, a contractor,[4] and defendant, the owner and operator of Blue Cliff College, an institution that "provides instruction and training for beauty and healthcare professions."[5] Pursuant to the Contract, plaintiff would "construct a build-out of the facilities for" Blue Cliff's new location in Metairie, Louisiana.[6] The agreed-upon total cost of the project was $1,526,032.82,[7] which was subsequently increased

---

[1] R. Doc. No. 18.
[2] R. Doc. No. 19.
[3] R. Doc. Nos. 1, ¶ 4, and 18, at 2.
[4] *See* R. Doc. No. 6-1, at 12 (listing plaintiff as "the Contractor").
[5] R. Doc. No. 18, at 2.
[6] *Id.*
[7] R. Doc. No. 6-1, at 1.

to $1,558,362.31 pursuant to five change orders.[8] Plaintiff states that the parties also agreed to use a standard form agreement from the American Institute of Architects ("AIA Agreement") for the project.[9] Plaintiff asserts that it provided the AIA Agreement to the defendant and asked defendant to sign and return the document so that it could be executed, but defendant never did.[10]

Plaintiff's complaint in the above-captioned case asserts a claim for breach of contract, alleging that defendant made three of five installment payments to plaintiff but did not pay the full amount of the fourth payment and has not paid any of the fifth. Despite multiple requests for payment, plaintiff asserts, defendant has failed to pay $623,474.71 owed to plaintiff.[11] Plaintiff filed this action in federal court on January 10, 2023, seeking payment of the amount owed, as well as attorney's fees and costs.[12] Defendant filed an answer and counterclaims for breach of contract and negligence.[13] Defendant subsequently filed the instant motion to compel mediation and stay the above-captioned case.

## II.    STANDARD OF LAW

"A court may grant a motion to compel mediation or arbitration when the parties have previously entered into an arbitration or mediation agreement." *Brady*

---

[8] *Id.* at 2–11.

[9] R. Doc. No. 19, at 2.

[10] *Id.* at 2, 9 (July 11, 2022 email, subject line "AIA Document A101," from plaintiff's employee to the president and CEO of defendant asking him to "[p]lease review and if all is in order have signed and returned and we will execute a copy once completed.").

[11] R. Doc. No. 6, ¶¶ 6–14.

[12] *Id.* at 5.

[13] R. Doc. No. 17, ¶¶ 32–38.

*v. St. John Baptist Par. Council*, No. 14-1613, 2014 WL 4540072, at *1 (E.D. La. Sept. 11, 2014) (Barbier, J.); *see also, e.g.*, *Patriot Constr. & Equip., L.L.C. v. Quad States Constr.*, No. 13-1529, 2014 WL 1340035, at *2 (W.D. La. Apr. 2, 2014); *Off. VP, LLC v. Ideal Health, Inc.*, No. 11-741, 2012 WL 787041, at *6–7 (W.D. Tex. Mar. 6, 2012); *Quick Print of New Orleans, Inc. v. Danka Off. Imaging Co.*, No. 04–644, 2004 WL 1488656, at *1–2 (E.D. La. June 30, 2012) (Duval, J.) (granting motion to compel mediation and/or arbitration and motion to stay pending resolution). While "some cases address whether to compel both arbitration and mediation, there does not appear to be a specific analysis for agreements to mediate," and courts in this district have therefore relied upon and applied cases examining motions to compel arbitration when considering motions to compel mediation. *Brady*, 2014 WL 4540072, at *1 n.1.

To determine if the parties in fact agreed to mediate, a court must determine "(1) whether there is a valid [mediation] agreement between the parties; and (2) whether the dispute in question falls within the scope of the agreement." *Quick Print*, 2004 WL 1488656, at *2 (citing *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1072 (5th Cir. 2002)) (noting that the above two-step analysis applies to "a Motion to Compel Mediation and/or Arbitration").

## III.    ANALYSIS

In its motion to compel mediation, the defendant argues that, "[a]t all times, the Parties' contractual relationship was governed by the executed [Contract] and AIA Agreement . . . ."[14] The defendant further states that the "AIA Agreement

---

[14] R. Doc. No. 18-2, at 1.

includes a mandatory mediation provision" which "requires that all disputes be submitted to mediation before proceeding to litigation."[15]

Defendant notes that the AIA Agreement includes a binding dispute resolution provision, which states that the method of dispute resolution shall be mediation, and incorporates by reference the provisions of Article 15 of AIA Document A201-2017, a standard form from the AIA providing general conditions for construction contracts.[16] Article 15, § 15.3.1 of AIA Document A201-2017 states that "[c]laims, disputes, or other matters in controversy arising out of or related to the Contract, . . . shall be subject to mediation as a condition precedent to binding dispute resolution."[17] Section 15.1.1 of that same article defines a "claim" as

> a demand or assertion by one of the parties seeking, as a matter of right, payment of money, a change in the Contract Time, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract.

AIA Document A201-2017, art. 15, § 15.1.1. Defendant asserts that plaintiff's claim for breach of contract and seeking payment of amounts it claims are due falls under the definition of "claim" provided by AIA Document A201-2017, which is incorporated into the AIA Agreement, and is accordingly governed by the AIA Agreement's mediation provision. The defendant concludes that, as the parties "have a valid and enforceable agreement to mediate that covers this dispute, and any claims which

---

[15] *Id.*
[16] R. Doc. No. 6-1, at 17–18.
[17] AIA Document A201-2017, art. 15, § 15.3.1.

[plaintiff] may have[,]" the Court should order plaintiff to mediate its claims and stay this case.[18]

Plaintiff, in its opposition, argues that no agreement to mediate exists, as defendant "never executed the AIA [Agreement], nor did it comply with the [AIA] Agreement's payment provisions or its dispute resolution provisions."[19] Plaintiff further notes that the defendant explicitly states in its answer to plaintiff's amended complaint that "[t]he AIA contract which Plaintiff refers to . . . is not executed."[20] Accordingly, plaintiff asserts, as the defendant has not indicated an intent to be bound by the terms of the AIA Agreement, the defendant cannot seek to enforce the AIA Agreement's provisions to compel mediation.[21]

As the Fifth Circuit has noted, the determination of whether parties agreed to arbitrate a dispute "is generally made on the basis of 'ordinary state-law principles that govern the formation of contracts.'" *Fleetwood*, 280 F.3d at 1073 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In Louisiana, "[i]t is well-settled jurisprudence that a binding contract does not exist until the written agreement is confected and signed by the parties." *Sunset Realty, Inc. v. Culp*, 184 So. 3d 256, 259 (La. App. 2 Cir. 1/13/16), *writ denied*, 191 So. 3d 590 (La. 4/15/16).

Further, Louisiana Civil Code Article 1947 provides that "[w]hen, in the absence of a legal requirement, the parties have contemplated a certain form, it is

---

[18] R. Doc. No. 18-2, at 2.
[19] R. Doc. No. 19, at 2.
[20] R. Doc. No. 17, Answer ¶ 4.
[21] R. Doc. No. 19, at 7.

presumed that they do not intend to be bound until the contract is executed in that form." Article 1947 therefore "codifies the long[-]recognized concept that when the parties 'intended from the beginning to reduce their negotiations to a written contract, neither the plaintiff nor the defendant was bound until the contract was reduced to writing and signed by them.'" *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 812 So. 2d 834, 839 (La. App. 4 Cir. 3/6/02) (quoting *Breaux Bros. Constr. Co. v. Associated Contractors*, 226 La. 720, 728, 77 So.2d 17, 20 (1954)).

Louisiana Civil Code Article 1936 is a further relevant consideration. Pursuant to Article 1936, "[a] medium or a manner of acceptance is reasonable if it is the one used in making the offer or one customary in similar transactions at the time and place the offer is received, unless circumstances known to the offeree indicate otherwise." "There is no evidence that it is customary in the construction industry for a []contract worth more than [$1,500,000] to be accepted by commencement of performance rather than execution of a written agreement." *Avallone Architectural Specialties, LLC v. Blue Cord Design & Constr. LLC*, No. 22-6153, 2023 WL 2995924, at *4 (W.D. La. Apr. 3, 2023), *report and recommendation adopted*, No. 22-6153, 2023 WL 2994119 (W.D. La. Apr. 18, 2023).[22]

However, "while ordinarily an act under private signature must be signed by the parties, . . . a jurisprudential exception to this statutory requirement exists when only one party has signed an agreement and the non-signing party has availed

---

[22] *See* R. Doc. No. 1-1, at 1 (project proposal, signed by all parties, showing a total amount due of $1,526,032.82).

himself of the agreement or taken actions evidencing his acceptance thereof." *Harvey v. Collins*, 2020-0840, 2021 WL 1452210, *11 (La. App. 1 Cir. 4/16/21), *writ denied*, 324 So. 3d 96 (La. 9/27/21). Thus, "[a] party who seeks to enforce a written contract, where signatures were the contemplated form, has the burden of proving that the [] party who has not signed agreed to be bound by the terms of that written contract." *Robert M. Coleman & Partners, Architects v. Lewis*, 2013-0549, 2014 WL 4919689, *3 (La. App. 1 Cir. 9/30/14), *writ denied*, 161 So. 3d 638 (La. 3/13/15) (citing *Baldwin v. Bass*, 685 So. 2d 436, 439 (La. App. 2 Cir. 12/11/96), *writ denied*, 690 So. 2d 20 (La. 3/7/97)). Defendant has not carried its burden of proving that, prior to its motion to compel mediation, it agreed to be bound by the terms of the AIA Agreement.

Plaintiff provides a copy of the proposed, but unsigned, AIA Agreement[23] and emails between plaintiff and defendant in which plaintiff asks defendant to sign the AIA Agreement.[24] Defendant has offered no evidence that it ultimately signed the AIA Agreement and, crucially, by arguing that the AIA Agreement was unexecuted in its answer[25] to plaintiff's amended complaint, defendant demonstrated its understanding that the AIA Agreement would not be binding until it was signed by all parties.[26]

---

[23] R. Doc. No. 6-1, at 21.

[24] R. Doc. No. 19, at 9–10.

[25] R. Doc. No. 17, Answer ¶ 4 ("The AIA contract which Plaintiff refers to . . . is not executed.").

[26] Defendant also indicates a further lack of agreement to be bound by the AIA Agreement's terms by failing to follow the AIA Agreement's requirement that all claims be referred to an "Initial Decision Maker" as a condition precedent to mediation. The terms of AIA Document A201-2017, as incorporated into the AIA Agreement, mandate that any claims under the Contract "shall be referred to the

In summary, defendant has provided no evidence "clearly indicative of [defendant's] consent" to be bound by the AIA Agreement sufficient for the Court to find the agreement to be valid and enforceable despite being unsigned by the defendant. *Robert M. Coleman & Partners*, 2014 WL 4919689, *3; *see also Quick Print*, 2004 WL 1488656, at *2.

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that defendant's motion[27] to compel mediation and to stay the above-captioned case is **DENIED**.

New Orleans, Louisiana, May 23, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

Initial Decision Maker for initial decision" and "an initial decision shall be required as a condition precedent to mediation of any Claim." AIA Document A201-2017, art. 15, § 15.2.1. The AIA Agreement names the project's architect, Steinmetz & Associates, as the Initial Decision Maker. R. Doc. No. 6-1, at 17; *see also* R. Doc. No. 17, Counterclaim ¶ 8 (stating that Steinmetz & Associates is the project's architect). No evidence has been provided to the Court showing that the defendant has referred plaintiff's claims or defendant's own counterclaims to the Initial Decision Maker. Defendant instead seeks an order from this Court directing the parties to mediate, bypassing the AIA Agreement's procedural requirements. Plaintiff also argues that defendant's failure to timely make the fourth and fifth installment payments violated the terms of the AIA Agreement and is further evidence that defendant did not intend to be bound by the agreement's terms.

[27] R. Doc. No. 18.